THE BELKNAP HARDWARE MANUFACTURING COMPANY
v. HENRY E. SLEETH *et al.*

No. 15,346. (93 Pac. 580.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Review.* This court may reëxamine the findings of the district court based entirely upon written and documentary evidence when the case is presented here in practically the same aspect as in the trial court.

2. ———— *Party as a Witness—Refusal to Testify—Presumption.* Where the deposition of a non-resident party is taken at the instance of the adverse party the refusal of such witness to testify to material matters appearing to be within his knowledge, where no sufficient reason is given for such refusal,

is the denial of a substantial right, and warrants the inference that the matter or information so withheld would, if divulged, have been unfavorable to such witness and of benefit to the party seeking it.

3. FRAUD—*Evidence.* Fraud, if it exists, is usually disclosed by the condition of the parties, the details of the transaction, and the surrounding circumstances; and the presumption arising from the refusal of a party, when examined as a witness, to give the material details within his knowledge of a transaction under investigation should be added to the facts and. circumstances proved in determining the good faith of such transaction.

Error from Greenwood district court; GRANVILLE P. AIKMAN, judge.   Opinion filed January 11, 1908.   Reversed.

### STATEMENT.

THIS was an action in the nature of ejectment, by the Belknap Hardware Manufacturing Company, to recover 320 acres of land from Henry E. Sleeth and Jessie Sleeth, his wife, who claim to be the owners, and W. L. Jost and wife, tenants upon the land.   The following undisputed facts appeared upon the trial:

Ross Burget, of Brookston, Ind., was engaged in the hardware business at that place until December 19, 1901, when he traded his stock for the land in question. The consideration named in the deed was $6400.   Of this he paid $1000 in money; the remaining $5400 was the amount of the goods.   At the time of this exchange he was indebted to various wholesale houses for goods purchased, among others to the plaintiff company, of Louisville, Ky.   On September 1, 1902, he executed a mortgage upon the land to Henderson Burget, his father, purporting to secure an indebtedness of $8000. The plaintiff sued Ross Burget in a circuit court in Indiana, and on May 1, 1903, recovered a judgment for $472.30, and costs, upon its claim for goods furnished. On May 22, 1903, the plaintiff sued Burget upon this judgment in the district court of Greenwood county, attached this land, and caused constructive service to

be made upon Burget. The first publication was made June 11, 1903. Judgment was rendered in that action September 3, 1903, finding $479.30 due to the plaintiff, and ordering the land so attached to be sold to satisfy that amount and the costs. Such further proceedings were had in that action that the land was sold, the sale confirmed, a certificate issued, and on May 22, 1905, a sheriff's deed was executed to the plaintiff conveying the land, and thereupon this action was commenced. Sleeth and wife claim to have purchased this land, and it was conveyed to them by a deed dated March 28, 1903, expressing a consideration of $9600, and recorded in Greenwood county June 4, 1903. Ross Burget inspected this land about the time he purchased it, and rented it to Jost, and the latter remained in possession as tenant until January 1, 1905. Neither of the Sleeths ever saw the land. The rents were paid by Jost to Ross Burget, as the alleged agent of the Sleeths, and by such agent paid over to Henderson Burget and credited on the mortgage. Jost had not accounted for the rents except to Ross Burget.

On November 25, 1904, Ross Burget was adjudged a bankrupt in the proper court in Indiana, and was discharged from his debts as a bankrupt May 18, 1906.

The plaintiff claims that the conveyance to the Sleeths was fraudulent and void, while they claim that it was a valid transfer. The action was tried without a jury and judgment was rendered for the defendants. The plaintiff brings the case here for review.

*Howard J. Hodgson,* for plaintiff in error.
*D. B. Fuller,* for defendants in error.

The opinion of the court was delivered by

BENSON, J.: The only question in this case is whether the conveyance from Ross Burget to Henry E. Sleeth and wife was made in good faith or whether it was fraudulent as to creditors. The evidence bearing upon this issue was written, consisting of depositions

and documents; only one witness testified orally, and his testimony related solely to the value of the land. The case is presented here in about the same attitude as in the district court. While the findings of the trial court in such a situation are entitled to careful consideration, and in doubtful cases will turn the scale in favor of affirmance, still, where all the material testimony is in writing and the case is presented here in practically the same aspect as in the trial court, such findings are not absolutely controlling, and will not be sustained if clearly overborne by the weight of the evidence. (*Robinson v. Melvin,* 14 Kan. 484; *Durham v. C. C. & M. Co.,* 22 Kan. 232; *Bank v. McIntosh,* 72 Kan. 603, 84 Pac. 535.)

The depositions consisted of the testimony of defendant Henry E. Sleeth, Ross Burget, his grantor, and, as Sleeth testified, his agent, and Henderson Burget, the father of Ross Burget. The testimony of the last-named witness was, however, quite unimportant upon the issue tried. Thus it appears that the case was practically submitted on the depositions of Sleeth and Ross Burget.

The admissions of a party are, as stated by Mr. Justice Brewer in *Durham v. C. C. & M. Co., supra,* good against him.

In addition to the facts above stated, the evidence disclosed that Ross Burget rented this land to Mr. Jost, who occupied it under such contract from March 1, 1902, until the spring of 1905, and all rents were paid to Burget during that time, after allowing credits for expenses and improvements. The Sleeths had no communications or dealings with the tenant whatever. Burget visited this land in February, 1903, and, in March, 1903, made the deed to the Sleeths in Indiana, where they all resided. Henry E. Sleeth was a farm hand, working for Henderson Burget part of the time. He had no property except an unimproved town lot. He never saw the land, and made no inquiries about it except of Ross Burget and Henderson Burget. He tes-

tified that he verbally appointed Ross Burget his agent to collect the rents, and that the rents were turned over to Henderson Burget to apply on the mortgage upon the land. He was not able to give a statement of rents so received and applied on the mortgage. The deed to Sleeth is dated March 28, 1903, and the depositions show that it was delivered April 15, 1903. The consideration expressed is $9600. Sleeth testified that he paid $2600 in cash sometime in 1903, and assumed a mortgage of $7000 to Henderson Burget, and that this money was from the savings of wages and from gifts, but that the largest gift he ever received was $50. He gave vague and indefinite testimony about doing business with banks, and when asked from which bank he had drawn the money said: "It might have been drawn from either, but not all of it from either bank or any bank." In a later deposition he was asked: "Where did you have this money on deposit or in safety prior to the time you made payment to Mr. Burget?" His answer was: "I did n't have it on deposit." It does not appear that he sold the lot referred to to raise the money, and he gave no other explanation of the source from which he received it. He heard of the litigation affecting this land in the summer of 1903, but took no action in the matter.

Ross Burget testified that he collected the rents and applied them on the mortgage down to the spring of 1905, and that the mortgage debt was reduced from $7000 to $4000 between April 15, 1903, and the spring of 1905, but that he made no payment thereon except the application of the rents, from which the cost of fencing and other expenses were deducted. But neither Sleeth nor Burget presented any account or statement of such rents or expenses, although repeatedly called for in their examination as witnesses.

The land appears to have remained in the control and dominion of Burget down to the spring of 1905, when Sleeth himself made a lease upon it. During the two years between the date of the deed and that time

Burget had attended to the rents, improvements and expenses and applied the proceeds upon the mortgage exactly as he might have done had the deed not been made, except, he says, he exhibited the statements, accounts of rents, etc., to Sleeth.

The evidence discloses a transaction of such a nature and with such circumstances as to challenge careful scrutiny to ascertain whether the conveyance was in good faith. It seems that Mr. Sleeth never visited this farm, for which he claims to have paid $2600 cash and agreed to pay $7000 more; that he made no inquiries of the tenant or of others in the locality; that he could not or would not disclose how he obtained the money; that his statements about having part of it in a bank were contradicted by his later deposition; that he took no steps to protect his interest when informed that the property was in litigation; that his grantor was financially embarrassed, and soon became bankrupt; that he could not or would not give a statement of rents received and expenses paid; that the entire management down to the spring of 1905 was left with the grantor, even to the making of and allowance for improvements; that without showing any money received, except the rents for two years, less expenses and cost of improvements, the amount of which he refused to give, he had still reduced the mortgage by $3000, but would give no account of payments thereon; that the deed was dated in March, 1903, and yet no claim was made of any payment until April 15, 1903; and that he refused to account for the delay in recording it. These are among the circumstances that demanded attention and called for explanation.

A still more serious matter, however, is presented. Both Henry E. Sleeth and Ross Burget were twice examined touching these matters, from which the foregoing facts appear. In the course of the examinations of Mr. Sleeth, in December, 1905, as a witness for the plaintiff, the following appears in the record:

"Ques. Who occupied this farm at the time you received it? Ans. Mr. Jost.

"Q. State the nature of your contract with Mr. Jost. [Question objected to by defendant as incompetent and on the advice of counsel witness refuses to answer.]

"Q. What accounting, if any, has Mr. Jost made to you? If any, so state. A. Made none, except through agents.

"Q. What agent or agents, other than Mr. Ross Burget, have you employed to look after the farm? [Defendant objects to question for the reason it is not proper examination in chief and is not relevant or material and witness is therefore advised not to answer.]"

In his subsequent examination, in August, 1906, appears the following:

"Ques. If you had any conversation with Mr. Ross Burget with reference to the purchase of this land prior to March 28, 1903, you may so state and what that conversation was. [Witness refuses to answer, on advice of his counsel.]"

"Q. If you disposed of any property for the purpose of raising the twenty-six hundred dollars purchase-money you may so state, what property it was and when disposed of. [Witness refuses to answer, on advice of counsel.]"

"Q. Who presented you the note of eight thousand dollars which the mortgage secured and what was the total amount of credit, set out on the note, with reference to the final accounting? [Witness refuses to answer, on advice of counsel. The attorney for the plaintiff insists and demands that the foregoing question be answered because of its materiality.]"

"Q. Why do you know that all the rents and profits from this land has been applied on said note? [Witness refuses to answer, on advice of counsel.]

"Q. If Ross Burget ever tendered to you a receipt or memorandum in his accounting to you as your agent you may so state, and what the receipt or memorandum was. [Witness refuses to answer, on advice of counsel.]

"Q. What compensation, if any, did you make to Mr. Ross Burget for his services as your agent? [Witness refuses to answer, on advice of counsel.]"

"Q. Upon what terms and conditions was this land renting for at the time you received the deed? [Defend-

Belknap v. Sleeth.

ant objects to the question.  Witness refuses to answer, on advice of his counsel.]"

"Q.  State how much credit has been given you on this note at the present time.  [Witness refuses to answer.]"

"Q.  What terms and conditions did you authorize Mr. Ross Burget to contract with Mr. Jost for the rental of this property?  [Defendant objects to the question and witness refuses to answer, on advice of counsel.]"

"Q.  Explain why you did not forward the deed to Greenwood county, Kansas, for record immediately upon its receipt from Ross Burget.  [Witness refuses to answer, on advice of counsel.]"

"Q.  If Jessie Sleeth, your wife, paid no part of this purchase-money and had no other interest in the purchase of the land other than as your wife, explain why the deed of conveyance was made to you and Jessie Sleeth jointly.  [Defendant objects to the question, and witness refuses to answer, on advice of counsel.]"

In taking the deposition of Ross Burget the plaintiff encountered like evasions and refusals in several instances.

In the course of these examinations Mr. Sleeth testified generally that he had acted in good faith and without fraud, and the pertinency of the foregoing questions is apparent.  He was the principal party defendant, and a non-resident of Kansas.  The civil code provides:

"Any party to a civil action or proceeding may compel any adverse party or person for whose benefit such action or proceeding is instituted, prosecuted or defended, at the trial or by deposition to testify as a witness in the same manner and subject to the same rules, as other witnesses."  (Civ. Code, § 321; Gen. Stat. 1901, § 4769.)

The plaintiff therefore had a clear right to the evidence, not to such only as the witness felt inclined to give but to all that was within his knowledge pertinent to the issue.  The witness had no right to withhold such testimony "on the advice of counsel" or otherwise.  This

is now conceded, and counsel representing him on the trial and in this court (but not in the taking of the depositions) says, in his brief, regarding these strictures of Sleeth's counsel and concerning the refusal of the witness to answer:

"No exception can be taken to the strictures of counsel in this regard. But he should remember that when he scores Sleeth's counsel he exonerates Sleeth. These depositions were taken about the time the news of the taking of the depositions of H. H. Rogers in New York in the Standard Oil investigation reached Indiana. The matter of objecting to testimony "on the advice of counsel" was new, and Sleeth's counsel could not resist the temptation to try his hand at it. The temptation was very great to a young lawyer."

This may explain the misconduct, but does not obviate the consequences. The fact remains that defendant Sleeth in a proceeding in the action wrongfully deprived the plaintiff of a substantial right. We are not advised what procedure is provided in the jurisdiction where the depositions were taken to compel a refractory witness to answer. We may suppose that it is ample, but the question remains, What effect should such conduct have in the consideration of a case, where the successful party thus living beyond the jurisdiction of the court has refused to testify in a material matter in behalf of the opposing party? It must be conceded that the benefit of all reasonable presumptions arising from his refusal should be given to the other party. The conduct of a party in omitting to produce evidence peculiarly within his knowledge frequently affords occasion for presumptions against him. (*Kirby v. Tallmadge,* 160 U. S. 379, 16 Sup. Ct. 349, 14 L. Ed. 463.) This rule has been often applied where a party withholds evidence within his exclusive possession and the circumstances are such as to impel an honest man to produce the testimony. In this case the witness not only failed but refused to testify concerning material matters that must have been within his knowledge. In

Belknap v. Sleeth.

a case involving such contumacy of a party as a witness it was said:

"It seems plain to us that there is a stronger presumption to be raised against a party in whose possession the facts must be, if they exist, by which suspicion would be removed and all question as to the propriety of his conduct be set at rest, who stolidly refuses, without the suggestion of a reason, to aid the court in arriving at the truth." (*Aragon Coffee Co. v. Rogers,* 105 Va. 51, 59, 52 S. E. 843.)

In that case the witness testified that he had given full value for the note in suit, but when called upon to explain the transaction he met the inquiries with evasion, equivocation, and refusal to answer.

"When a witness who evades cross-examination is the chief party in interest, or one who is plainly seeking to screen him, his testimony in his own favor ought to be disregarded when it needs explanation.

"It is to be presumed that when a witness refuses to explain what he can explain the explanation would be to his prejudice." (*Heath v. Waters,* 40 Mich. 457, syllabus.)

"It has been more than once said that the testimony in a case often consists in what is not proved as well as in what is proved. Where withholding testimony raises a violent presumption that a fact not clearly proved or disproved exists, it is not error to allude to the fact of withholding as a circumstance strengthening the proof. That was all that was done here." (*Frick v. Barbour,* 64 Pa. St. 120, 121.)

"The consciousness indicated by conduct may be, not an indefinite one affecting the weakness of the cause at large, but a specific one concerning the defects of a particular element in the cause. The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also

open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted. The non-production of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause. Ever since the case of the chimney-sweeper's jewel this has been a recognized principle." (Wig. Ev. § 285.)

The conduct of a party as a witness, and his refusal to give frank explanations of the transaction under investigation, were commented on by Mr. Justice Burch in *Fincke v. Bundrick*, 72 Kan. 182, 83 Pac. 403, 4 L. R. A., n. s., 820, where the reasonable inferences from evasions were drawn and applied.

A careful reading of the testimony of defendant Henry E. Sleeth, contained in the two depositions, convinces us that the principles embraced in the foregoing quotations are applicable, and the natural inference is that the details and explanations called for and withheld would have shown the falsity of his claim that the transaction was in good faith, in view also of their inherent improbability, as evinced by his entire conduct.

Little need be said about the like refusals of Ross Burget. He was Sleeth's grantor, and both testified that he was Sleeth's agent. His refusals were prompted by the same advice, and presumably were rooted in the same reason, and the same presumption must apply.

This was an action where the greatest liberality in the presentation of the evidence consistent with orderly practice ought to have been allowed. The transaction was in a distant state, and between persons whose interests were hostile to the plaintiff. Commenting upon such a situation, the supreme court of the United States has said:

"Parties contemplating a fraud frequently pursue such devious courses to conceal their designs, and resort to such subtle practices to mislead their unsecured

Belknap v. Sleeth.

creditors, that the fraud becomes impossible to detect, unless the door be swung wide open for the admission of all testimony having any possible bearing upon the question.   Facts which to the court might seem of no pertinence and be rejected as having no legal tendency to show knowledge of the fraud might be considered by the jury as significant and indicative of a guilty participation.   Even negative evidence may sometimes have a positive value." (*Sonnentheil v. Moerlein Brewing Co.,* 172 U. S. 401, 410, 19 Sup. Ct. 233, 43 L. Ed. 492.)

"It is true, as contended, that honesty and fair dealing are presumed, and that one charging fraud must prove the same; but direct proof of a dishonest transfer of property can seldom be procured.   'A fraudulent purpose is known only to the parties to the transaction, and they do not hasten to tell it.   As a rule, therefore, fraud is disclosed only by the condition of the parties, the details of the transaction, and the surrounding circumstances.' " (*Cox v. Cox,* 39 Kan. 121, 123, 17 Pac. 847.)

The conditions of the parties and the details and circumstances of this transaction were all proper subjects of evidence, and defendant Sleeth, having wrongfully refused to give such evidence, ought not to profit thereby.   The presumption against him arising upon such refusal must be added to all the facts and circumstances proved, and upon the whole case thus presented we are constrained to hold that the finding in favor of the defendants cannot be sustained.

Wherefore the judgment is reversed, and a new trial ordered.