H. BARTELS, *Appellee,* v. SCHOOL DISTRICT No. 118 of McPherson County et al. (C. W. DELANO et al. *Appellants*).

No. 17,917.

SYLLABUS BY THE COURT.

BUILDING CONTRACT—*Extras—Extra Compensation—Findings of Court.* In a controversy as to whether parts of a building were provided for in the building contract or were extras it appeared that the provisions of the contract respecting them were obscure and conflicting, and there was oral and conflicting testimony as to the interpretation of the contract by the parties and also as to what was done under it, and hence the findings of the trial court on this issue, which are supported by some substantial testimony, can not be disturbed on appeal, although the supreme court might have reached a different conclusion in an original investigation based on the same testimony.

Appeal from McPherson district court. Opinion filed April 12, 1913. Affirmed.

*Frank O. Johnson,* of McPherson, and *J. S. Simmons,* of Hutchinson, for the appellants.

*F. P. Hettinger,* and *James Hettinger,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by H. Bartels to recover a judgment for material furnished to C. W. DeLano, as contractor, to be used in the erection of a six-room schoolhouse for school district No. 118 in McPherson county, and to enforce a mechanic's lien therefor. The United States Fidelity and Guaranty Company, of Baltimore, which gave a bond for the faithful performance of the contract by DeLano, was made a party. Other parties came in and claimed liens for labor and material, but the rulings and decisions on these claims are not in controversy now. DeLano failed to finish the building in accordance with his contract, and the school district, which did complete the building, asked damages for the failure of DeLano to furnish labor and material in accordance with his contract, and also for the penalty specified in the contract for failure to complete it, to wit: $5 a day after September 10, 1909, until October 1, 1909, and $10 a day after October 1, 1909, until the building was completed, and this was never done by him. The principal controversy between the parties grew out of the claims of DeLano for extra compensation for work and labor done upon the building and which, it is claimed, were not included in the contract. The court found that he was entitled to $235.70 for extras provided by him, but found against a number of things furnished and done by him which, it is claimed, were outside of the contract. Of the claims not allowed there are but two about which appellants now complain. One is a claim for $1390 for vent flues and stacks, and the other is $265 for gables on the building. In their appeal DeLano and the guaranty company insist that the evidence does not support the findings and judgment of the court. In the principal or general contract, which was executed on May 1, 1909, DeLano was to provide all the material and furnish all the labor to erect the

schoolhouse, excluding the plant for the heating and ventilation of the building, for which he was to receive $9809.50. In the second contract, executed on July 3, 1909, Lewis & Kitchen as well as DeLano agreed to provide for a heating and ventilating plant in accordance with plans and specifications which were provided. They were to furnish all the materials and do all the work in installing a gravity furnace system of heating and ventilation for $1400, $1200 of which was for heating, and $200 of the amount, it was stipulated, was for the brick work of the vent stack and vault for a dry closet sytem.

There is confusion and conflict in the stipulations of the contract as to the vent flues and stacks, which are referred to in the general as well as in the heating contract. In the general contract there is a provision that the building is to be completed according to the plans and specifications except as to heating and ventilating and some other items that are enumerated, and appellants insist that everything furnished and done toward the flues and stacks by the contractor constituted a part of the heating and ventilating system and were extras which should have been allowed by the trial court. The flues, chimneys and other brick work were provided for in the plans and specifications of the general contract, and in the second, or heating, contract, which was signed by DeLano, it was expressly stated that the building of the flues and stacks devolved upon DeLano. Although he testified that he did not understand that they were included in his contract he appears to have interpreted it as including them, because before the heating contract was made he had begun the construction of the building and was carrying up the flues and stacks with the walls of the building. That he regarded them as a part of his general contract is also indicated by the fact that he did not then claim them to be extra nor have their value approved in advance by the architect and the owner

as the contract provided. There was considerable oral testimony that the parties acted and treated the flues and stacks as part of the contract, and that when the second, or heating, contract was made the architect and DeLano, upon inquiry, stated to members of the school board that everything was included in the contract. Another reason why the flues and stacks were not regarded to be a part of the heating plant is that the cost of them about equaled the price paid for the entire furnace and heating plant provided for in the second contract.

As to the gable which was claimed to be an extra, there was testimony that a gable placed in the roof was not shown upon one of the plans of the building. The gable was shown, however, on three of the plans, but appears to have been omitted from what is called the roof plan. There is testimony to the effect that at one time it was the subject of discussion with the members of the board, who insisted that it was included in the contract, and the result was that the contractor made a pencil correction on the roof plan and put it in the building without having it approved and provided for as an extra. According to one of the witnesses the plan was corrected by DeLano and the lumber cut for the gable before any question was raised about the omission and before any claim was made that it was not included in the contract, but this is denied by DeLano.

It thus appears that there is a conflict in the oral testimony as to the interpretation which the parties placed upon the contract on both items for extras, as well as a conflict of testimony as to what was done under the contract. In this state of the case the finding of the court that the so-called extras were not intended to be included in the contract or treated by the parties as extras is binding on this appeal.

Appellants ask this court to examine the evidence independent of the prior adjudication of the trial

court, upon the theory that it is principally a construction of the contract and the specifications included in it explained by undisputed oral testimony. This may be done where all of the evidence as to the controverted points is in writing, and so, too, may findings be reviewed and set aside on appeal where there is no substantial testimony to support them. Here, however, there is, as we have seen, oral testimony of a conflicting character on the vital points in the case, and the findings of the trial·court based on such a conflict can not be disturbed on appeal even if this court might have reached a different conclusion in an original investigation of the same testimony. Counsel cite *Belknap v. Sleeth,* 77 Kan. 164, 93 Pac. 580, as an authority for an original consideration of the testimony in this case, but there all of the material testimony was in writing. One witness testified orally but his evidence was upon a point that was not material to the controversy, and the case was presented in this court substantially as it was in the district court. In this case there was competent oral evidence tending to support the findings of the trial court. It was its province to weigh the evidence, settle the conflicts in it and draw all reasonable inferences therefrom, and to set aside its findings because this court was of opinion that the preponderance of the evidence was against them would be a usurpation. There appears to be substantial and sufficient evidence to sustain the findings of the court and its judgment will, therefore, be affirmed.