No. 20,706.

A. A. KURT and F. C. KURT, Partners, etc., *Appellees*, v. TIPTON COX et al. (CLINTON V. COX, *Appellant*).

### SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER—*False Representations by Vendor—Vendor's Liability for Fraud.* A grantor who makes representations as to the character and quality of land situate a considerable distance away from the place of negotiations, which he knows to be untrue, and with the intention to deceive and defraud the grantee, and whereby he induces the grantee to purchase the land without inspecting it, to his injury and loss, can not escape liability for the fraud by the statement to the grantee at the time the sale is completed that he has never seen the land, nor by telling him that the information he has was obtained from others.

2. SAME—*False Representations—Shown by Circumstances.* That the grantor made representations, knowing them to be untrue, and for the purpose of deceiving and injuring the grantee, may be shown by circumstances as well as by direct and positive proof.

3. SAME—*Evidence Supports Findings of Fraud.* The evidence herein is deemed to be sufficient to uphold the findings of the jury that the representations were untrue and made with the fraudulent purpose of injuring the plaintiffs.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed June 9, 1917. Affirmed.

*R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellant.

*William Keith,* and *Monroe Wright,* both of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action the plaintiffs, A. A. Kurt and F. C. Kurt, asked a recovery of damages as against Clinton V. Cox, Tipton Cox, F. M. Newcom, Tom Mott, F. M. Hamilton and Lawrence Bowers for misrepresentations and fraud in the exchange of a stock of goods for a tract of land. Plaintiffs entered into an agreement with Clinton Cox whereby they traded their stock of merchandise, valued at about $14,-000, for 960 acres of land in Oklahoma and for $4000 cash,

plaintiffs giving back a note for $2060, secured by a mortgage on the land. A. A. Kurt acted for both plaintiffs. Prior to coming to any agreement of exchange Kurt had hesitated about going further in the transaction because he had not seen the land, and Cox told him that he himeslf had not seen the land but that his father, Tipton Cox, had seen it. According to Kurt's testimony, Cox in the final negotiations stated and agreed to guarantee the good quality of the land, and Kurt was finally prevailed upon to make the trade without seeing the land. Shortly after consummating the deal plaintiffs discovered that the land was practically worthless, and was located on top of a mountain. They then brought this action to recover damages resulting from the fraud practiced upon them by Clinton Cox, and others assisting him, in bringing about the exchange. It was claimed that Boyd Newcom and Tom Mott, real-estate brokers employed by Kurt, co-operated with Cox in the fraud, and F. M. Hamilton, an agent acting for Cox, Tipton Cox, who advised the younger Cox as to the value of the stock to be purchased, and Lawrence Bowers, through whom the title to the Oklahoma land was transferred, were also joined as defendants. The case was tried three times, and in the final trial the only defendants involved were Newcom, Mott and Clinton Cox. Plaintiffs secured judgment against Clinton Cox only, for the sum of $4750, and Cox appeals.

He contends that the evidence did not sustain the charge of fraud nor the findings and verdict of the jury. It is insisted that it was not shown that Clinton Cox made any representations to Kurt as to the quality and character of the land, nor that he had knowledge that the representations made were untrue. There was evidence introduced that several days before the exchange Clinton Cox, under an assumed name, had gone to Herington, where plaintiffs' stock of merchandise was located, and made an examination of it, and had also had his father, Tipton Cox, who was experienced in such matters, examine it and give his judgment upon its value. Kurt testified that during the negotiations for the trade he was told that as the Coxes were reliable people and were willing to guarantee the land he ought to be willing to exchange his stock for it without waiting to look at it, and that Clinton Cox not only

did guarantee the quality of the land, but at the final meeting he signed a paper describing it and guaranteeing it to be good tillable land, with good growth of grass and about one-third covered with a good quality of timber, this statement being in substantial accord with the oral representations that had been made. It was testified that the written guarantee was turned over to one of the defendants' agents to keep, and that the plaintiffs had not been able to get possession of it since. Plaintiffs were unable to get possession of the abstract of title to the land until several weeks after the exchange had been effected, and it was then discovered that on the day of the exchange Tipton Cox, in whom the title had stood, had transferred it to Lawrence Bowers, who was an employee in the Cox store and not a man of means; that the land was cheap government land which had never as yet been fully paid for, and that Tipton Cox had bought it at the price of $2.50 an acre.

In view of the direct and positive testimony of Kurt, that Clinton Cox just before the agreement of exchange was effected made a statement as to the quality of the land, which he also reduced to writing, and which was material, untrue and was relied upon by the plaintiffs, it must be held that the verdict was not without support. The statement was not qualified as to the source of his information nor as to the grounds of his belief. The jury, in effect, found that he made the false representations upon the day when the contract was closed by guaranteeing that the land had good soil, a good growth of saw timber, a good growth of grass, and that there was a quantity of it that was good tillable land, and that the representations were false. It is true that the jury found that he had told Kurt that he had never seen the land, and also that the statements which he had made as to its character and description were statements which he had obtained from others. The fact that he had gained his information from others and had never seen the land does not protect him from liability if he made positive and unequivocal statements and the guaranty that has been mentioned. If he made the statements, as Kurt has testified, knowing them to be untrue, with the intention of deceiving plaintiffs and inducing them to part with their property, it amounts to a fraud and he can not

Kurt v. Cox.

shelter himself behind the defense that he had not seen the land and that he told Kurt that his information had been obtained from others.

In *Westerman v. Corder*, 86 Kan., 239, 119 Pac. 868, where false representations were made by the grantor in the sale of property and the excuse was that they were made in good faith, the court said:

"While admitting that the representations were made and that they were untrue, it is contended that because they were made in good faith, believing them to be true, and no fraud was intended, therefore an estoppel was not created. It must be conceded that the effect is the same as it would have been if guilty knowledge had been shown. It does not repair the loss of the grantee to be told that the grantor supposed he was telling the truth." (p. 241.)

The court was applying the doctrine of equitable estoppel in that case, but in disposing of the case it was remarked that—

"It has often been held that false representations made and acted upon to the injury of another, although not known to be false by the party making them, may nevertheless in a proper case afford ground for the recovery of damages." (p. 241.)

The supreme court of Michigan, in *Holcomb v. Noble*, 69 Mich. 396, stated:

"Careful examination of the cases adjudicated in this State satisfies me that the doctrine is settled here, by a long line of cases, that if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity." (p. 399.)

(See, also, *Aldrich v. Scribner*, 154 Mich. 23; *Bullitt v. Farrar*, 42 Minn. 8; *Johnson v. Gulick*, 46 Neb. 817.)

The authorities are not in agreement as to whether or not good faith and intention to tell the truth will relieve the speaker from liability if the representations are untrue. A distinction is made in some cases where the representation is made by a mere volunteer who has no interest in the transaction and one who has a contractual relation to it. The one, it is said, has no higher duty than to answer honestly and in good faith, while it is the duty of the latter to be careful and accurate, and hence ignorance and mistake will not relieve him from liability. (Note, 7 L. R. A., n. s., 646.)

In view of the testimony in this case, it is not necessary to rest the decision upon the doctrine of *Westerman v. Corder,* supra, as there is testimony tending to support the claim of the plaintiffs that Cox knew the representations made were untrue and that they were fraudulently made to deceive the plaintiffs. It has been said that "fraudulent representations are those proceeding from or characterized by fraud. Their purpose is to deceive. A fraudulent representation in law is one that is either knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." (*Sallies v. Johnson,* 85 Conn. 77, 82. See, also, *Edgington v. Fitzmaurice,* L. R., 29 Ch. D. [Eng.] 459.) The fraudulent purpose of the defendant may be shown by circumstances, as well as by direct and positive proof. (*Morse v. Ryland,* 58 Kan. 250, 48 Pac. 957.) While the defendant had not seen the land, his father, who was engaged in business with him and coöperated with him in making the trade with plaintiffs, had seen it, and, of course, had knowledge of its character and quality. According to Kurt's testimony, Hamilton, the agent of the defendant, who acted for him in the negotiations, confirmed the statements of Newcom to the effect that the land was tillable, covered with a good growth of grass, about one-fourth in oak and pine saw timber; that it was in the gas and mining belt and within two miles of the biggest coal mine in Oklahoma, where the annual rainfall was about forty-four inches per year. At the outset Cox examined the stock of goods himself, and then he called his father, who also inspected the stock, but for some reason he did not choose to deal directly with plaintiffs, but made his statements and offers through his agent, Hamilton. The parties appeared to be anxious to close the deal without an inspection of the land by the plaintiffs, and they urged upon Kurt that the guaranty of Cox made it a safe proposition. At the close of the negotiations Cox gave the guaranty, which appeared to satisfy Kurt, and the exchange was made. Legal title to the land appears to have been placed in an employee of Cox who was holding it for him, and in the transfer Cox must have known that the property which he was putting in at $12 an acre had been transferred to his father for $2.50 per acre. When he made the statement to Kurt that he

had not seen the land he coupled with it the statement and assurance that his father had seen it. While Cox denied that he made and gave the guaranty as to the character and quality of the land, it was admitted that he had made and issued an advertisement, a copy of which was given to Kurt, and which was as follows:

"For Sale or Exchange: 960 acres of land located in Pittsburg County, Okla., oak, pine and hickory timber. Good ranch proposition, part tillable, well watered, within two or three miles of one of the largest coal mines in Oklahoma; also near the oil and gas developments, within two or three miles of the largest cement plant in Oklahoma. The timber alone should almost pay for this land. Located within three miles of interurban and railroad. Three miles from town of 4000 people. Legal description E ½ of sec. 30, all of sec. 31, twp. 4 N. range 17 E. Will exchange for good income property or merchandise. Address the owner direct and save commission."

These facts and circumstances were sufficient to warrant the inference that Cox knew that the representations were untrue and were made with the purpose of defrauding plaintiffs, even if the written guaranty had not been given. They are sufficient to overcome his declaration of an honest purpose and a lack of actual knowledge. To willfully shut his eyes to obvious facts within his control so that when called to account he might say that he had no personal knowledge of the facts is itself a fraud.

Complaint is made of instructions 10 and 11. The jury were advised that it was necessary for plaintiffs to prove that the representations were false and known to be false by the defendants and that their falsity might be proven by showing:

"First, Actual knowledge of the falsity of the representations by the defendants. In this case the proof must show that the representations were false and that the defendants had actual knowledge that they were false;

"Second, That the defendants made the representations as of their own knowledge, or in such absolute, unqualified and positive terms as to imply their personal knowledge of the facts, when in truth, the defendants had no knowledge whether the representations were true or false. In this case the proof must show that the representations were in fact false and in addition that the defendants made the representations as of their own knowledge, when in fact they had no knowledge whether they were true or false, without belief in their truth, or recklessly careless whether they were true or false.

"*Third,* That the defendants' special situation or means of knowledge were such as made it their duty to know as to the truth or falsity of the representations. In this case the proof must also show that the representations were in fact false and in addition that the defendants' special situation or means of knowledge were such as made it their duty to know as to the truth or falsity of the representations."

The principal criticism is that as Kurt's own testimony showed that he was informed that Cox had not seen the land and had derived his information from others there was no warrant for referring to statements that would imply knowledge, or for mentioning any substitute for actual knowledge. Knowledge might have been gained from other sources than a personal inspection of the land. It is immaterial whether it is designated as *actual knowledge* or just *knowledge*. As there was testimony of positive declarations by Cox, and also of circumstances tending to show that he must have known that the representations were untrue, the instructions appear to have been warranted.

Complaint is also made of instruction 18, which first stated that if the defendants Clinton Cox, Boyd Newcom and Tom Mott made representations as to the character and quality of the land believing them to be true, and informed the plaintiffs that they had derived their information from Tipton Cox and fully disclosed the source of their information without anything more, they would not be liable, and the court added:

"But, if you find that Clinton Cox or Newcom or Mott or either of them went further and stated that Tipton Cox had seen the land and that his representations in reference thereto could be relied upon, then you are instructed that the person or persons communicating such facts, if you find it to be a fact, to A. A. Kurt, are deemed to have adopted the representations of Tipton Cox as their own; and if the representations of Tipton Cox as to the character, quality and location of the Oklahoma land were not true, then you are instructed that the person or persons communicating the representations, if any, made by Tipton Cox, are responsible for them and they constitute fraud on their part. If you find that the defendants believed the representations which they made to Kurt were false then they will be liable to the plaintiffs, even though you may find that they informed Kurt that they had never seen the land, that their own information as to the land was derived from Tipton Cox and others and from a written statement which was delivered to Kurt and that they fully disclosed to him the sources of their information."

Kurt v. Cox.

There is no good reason for Cox to complain of this instruction. Under it the defendants were to be exonerated if the representations which they made were believed by them to be true and they had fully disclosed to the plaintiffs the source of their information and nothing more, but if they had added to their information that the information which they had obtained from Tipton Cox could be relied upon as true, the adoption of the representation and assurance thus given are the same as if they had made the statements upon their own responsibility. A positive assurance of that kind is treated as if made upon personal knowledge, and where it is made with the purpose of deceiving and defrauding parties the liability is the same as if they had derived their information from a personal inspection. Tipton Cox, referred to in the instruction, had been the owner of the land up to the day of the exchange made with plaintiffs and had been active in promoting the exchange, and his relations were so close to the defendant and to the transaction that he can not be regarded as a stranger. It is complained that the instruction makes the defendant liable regardless of the falsity of the representations or the fraudulent purpose. Those features of the law had been fully stated in other instructions and it was unnecessary to repeat all those points in the instruction in question. The instruction really went no farther than to say that if a party repeats what another has stated, and then adds his own assurance that the statements might be relied upon, he is responsible the same as he would have been if he had made them without information from others. Besides that, the special finding of the jury which places the liability of Clinton Cox on the unqualified statement which he made himself and which he put in the form of a guaranty, and which, under the plaintiff's evidence, must be assumed to be true, makes this objection as well as some of the other objections to the instructions of little consequence.

The findings of the jury support the judgment, and, no prejudicial error having been found in the proceedings, the judgment is affirmed.