No. 29,552.

Eliza J. Hase, *Appellant*, v. Bank of Commerce, of Ralston, Oklahoma, *Appellee*.

(296 Pac. 371.)

Opinion filed March 7, 1931.

*G. H. Lamb* and *W. E. Hogueland,* both of Yates Center, for the appellant.

*J. C. Culver,* of Yates Center, for the appellee.

The opinion of the court was delivered by

Smith, J.: The action was brought to set aside a mortgage on a farm owned by plaintiff. Defendant answered by way of an answer and cross petition praying for a foreclosure of the mortgage. The trial court sustained a demurrer to the evidence offered by plaintiff in support of her petition to cancel, and subsequently foreclosed the mortgage. Plaintiff appeals.

The petition alleged the ownership of the land in question and that while appellant was in Oklahoma to visit her daughter the appellee bank and her daughter fraudulently deceived the plaintiff and caused her to sign a note for $818.12 and a mortgage in connection therewith, believing it to be a note for $30, well knowing that plaintiff could not read or write, and was in feeble health and unable to understand and know what she was signing.

The petition also stated that appellant never received any consideration for the note.

The answer and cross petition denied any fraud, and alleged that appellant came into the bank with her daughter, that she was told that the daughter and her husband already owed the bank some money, whereupon appellant stated that she would pay the indebtedness of her daughter and that the bank could make the note large enough to cover that and the two hundred dollars which they wished to borrow and that she would give a mortgage on a farm she owned in Woodson county. The answer further alleged the

execution of the note and mortgage in question by the appellant making her mark. The cross petition also alleged that at a later date appellant and her daughter came to the bank and borrowed $30 on a note signed by both of them and that both of these notes were unpaid. Appellee prayed for a judgment against appellant for the amount of both notes with interest, and that the mortgage be foreclosed.

At the trial of the case opening statements were made by counsel for both parties, in substance as here set out.

The evidence of the appellant herself was about as follows: that she could not read or write; that she had gone down to visit her daughter; that she had gone to the bank with her daughter and had signed a note there. Her testimony varied; sometimes she said the note was for $10, sometimes $20 and sometimes $30. In the opening statements counsel for the appellee had stated that appellant had said at the time of executing the mortgage that she had helped her other children out and she wished to help this daughter. On her examination she flatly denied making any such statement. She says that what she said was:

"You have already got $329. How am I going to give you any more?"
"Q. Was that in the presence of the bankers? A. Yes, it was while we sat there and she signed this note for $10 as she said."

At another time she testified:

"Q. How did you make your mark on those papers at the bank? Your thumb print? A. I believe it was on a little paper. They put it on a little green thing and then had me press it on paper, with my thumb, but I didn't know what it was for. I didn't know a bit more what it was for than a hog going to war, because they never told me anything. They just shoved that paper out and told me to put my thumb on it. I never signed my name again by making a mark."

At another time she testified:

"A. I think I seen him at the bank. I don't know his name. Some of the officers of the bank came up to Kansas to see me about the note. There was two of them. One of them said they put the money out of the window at the bank for me and I received it, but I never received a penny in God A'lmighty's kingdom from airy one of them men. I never borrowed no $800 from the Ralston bank."

Further she testified:

"A. Yes, just one note that she said was for $30. My daughter said it was for $30, and I never was in that bank down there, that there Ralston bank, but one time."

Further—

"Q. Was that there in the bank in the presence of the officers of the bank, that she asked you to sign it? A. Yes, sir, right there in the bank; right on the end of the counter where she had the note. She had it spread out there, and she wanted me to sign it with her."

This is about all the evidence as to the transaction.

There was ample evidence furnished by doctors, business men and her own children, as well as the old lady herself, that she was feeble and did not have sufficient mental capacity to know what she was doing, and that she herself received nothing for her note.

Appellee urged here and in the court below that there is no evidence whatever to support the allegation in the petition—that the appellee bank had anything to do with the old lady's signing the note. This view was adopted by the trial court when the demurrer to the evidence was sustained. The rule as to demurrers to evidence is that the most favorable view will be taken of it and all inferences that can be drawn from the evidence offered will be indulged favorable to the party resisting the demurrer. (See *Ratcliff v. Paul,* 114 Kan. 506, 508, 220 Pac. 279, and cases there cited.)

In *Bank v. Jacobs,* 97 Kan. 798, 156 Pac. 771, this court held that a demurrer was properly overruled if the evidence contained but a modicum of probative value. Here the evidence was that the old lady had gone to the bank and waited outside a long time for her daughter. She had then been called in and asked to sign a note and mortgage which she insists was for some trifling sum. She signed by mark in the presence of the bank officers. She made the remark to her daughter—

"You have already got $329. How am I going to give you any more?"

This was at the time of signing the note and was in the presence of the bank officers. The bank did not pay her any of the money for the note. The evidence is overwhelming that the old lady was old and ignorant and of a weak mentality, not able to count money and unable to comprehend the significance of a note and mortgage even if she had been told she was signing one.

It is true that some of these statements contradict the allegations of the answer and the opening statement of counsel for appellee. The court was not bound to consider anything but the evidence offered by the old lady and was bound to consider that evidence in its most favorable light to her and draw every inference from it

that would be favorable to her. Fraud can be established by circumstantial as well as direct evidence. (*Belknap v. Sleeth,* 77 Kan. 164, 93 Pac. 580; *Kurt v. Cox,* 101 Kan. 54, 165 Pac. 827.)

In *Railway Co. v. Wood,* 66 Kan. 613, 72 Pac. 215, this court said:

"Circumstantial evidence in a civil case in order to be sufficient to sustain a verdict need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury." (Syl. ¶ 2.)

Appellee points out several instances where the old lady stated on cross-examination that it was her daughter who induced her to sign the note and mortgage. That is true, but one does not have to see her to know that she is an irresponsible old person who did not possess the mental equipment to appreciate just what part the bank officers had in procuring her mark on the note and mortgage or to comprehend that she was wholly ignorant of the significance of her mark being placed on these documents. Under the rule announced heretofore there was sufficient evidence introduced at the trial as to collusion and fraud between the bank and the daughter of appellant, lack of ability on the part of the old lady to comprehend what she was doing, ignorance of the effect of the action on her part and knowledge of the bank of this lack of comprehension and knowledge to warrant the case being submitted to the jury upon those questions. It was error to sustain the demurrer to the evidence.

The decision of the trial court is reversed with directions to proceed with a new trial.