A. W. WICKHAM V. C. O. GRANT.

1. WRITTEN CONTRACT; *Voidable for Fraud.* Where a person positively makes false representations as an inducement for another to contract with him, and such other person, relying wholly upon such false representation, enters into a written contract, the contract is voidable for fraud, although the false representations were innocently made.

2. FRAUDULENT PROMISSORY NOTES, *Not Collectible.* Where a railroad company was seeking to procure local aid for the construction of its road, and in pursuance of this plan its board of directors at a regular meeting adopted a blank form for notes for the purpose of obtaining private subscriptions; and by the order of the board a number of these blanks were delivered to one of the members of the board, who resided at the town to which the railroad was to be built, and it was made his duty by the order of the board to work up the desired aid; and such person being a Swede, and having great influence among the population of that nationality in his neighborhood, employed one Carl Carlson, another Swede of influence, who could not read or write English well, to take the blanks and obtain from the Swedish population in his town subscriptions to the railroad; and Carlson, under the direction and with the consent of said director, made positive assertions of fact to a Swede farmer, who could not read or understand English thoroughly, as to the purport and meaning of the language of the notes, which assertions of fact were false and untrue, though believed by the director and Carlson at the time to be true, and such Swede was induced thereby to sign the notes—such notes, being obtained by false assertions of fact, are fraudulent, and if accepted by the railroad company from its director cannot be collected from the maker thereof, and being non-negotiable, cannot be enforced in the hands of a purchaser from the railroad company for a valuable consideration.

*Error from McPherson District Court.*

ACTION, originally commenced before a justice of the peace of McPherson county, by *Wickham* against *Grant,* to recover upon two non-negotiable notes, copies of which are as follows:

"$15.　　　　　NEW GATLAND, January 8, 1879.

"On or before the 1st day of November, 1879, in consideration of the completion of the Salina & Southwestern railway from the city of Salina to the town of Lindsborg before that date, I promise to pay to the treasurer of said railway company, at his office in the city of Salina, the sum of fifteen

dollars, value received, with interest after maturity at the rate of ten per cent. per annum.

(Signed)                              C. O. GRANT."

"$15.                    NEW GATLAND, January 8, 1879.

"On or before the 1st day of November, 1880, in consideration of the completion of the Salina & Southwestern railway from the city of Salina to the town of Lindsborg before that date, I promise to pay to the treasurer of said railway company, at his office in the city of Salina, the sum of fifteen dollars, value received, with interest after maturity at the rate of ten per cent. per annum.

(Signed)                              C. O. GRANT."

Each note indorsed: "Pay to the order of A. W. Wickham.             (Signed)      J. W. GRIFFITH,
                 *Secretary and Treasurer S. & S. W. Rly. Co.*'

No written answer was filed, and after trial in that court, appeal was taken to the district court. Trial was had in the district court, by the court without a jury, at the October Term, 1881. The cause was taken under advisement to an adjourned session of the court, held on the 7th day of January, 1882. The following are the findings of fact and conclusions of law made and filed by the court:

"1. That in the latter part of the year 1878, the Salina & Southwestern railroad company was duly chartered to build and operate a railroad from the city of Salina, in the county of Saline, to the town of Lindsborg, in the county of McPherson; that soon after its organization, the company went to work to procure local aid for its line of road, contemplating aid both by municipal bonds and by private subscription. In pursuance of such plan, its board of directors at its regular meeting adopted forms of petition to be used by the public to call elections to vote bonds, and blank forms for private subscriptions, which latter form is the same as that used in these transactions at bar.

"2. That such blanks were by order of the board of directors delivered to one of their number, Mr. John Swanson, who resided in said town of Lindsborg, and whose general duty it was made by the board, among others of the board, to work up such desired aid.

"3. That said Swanson chose agents to aid in working up such aid, and among others, and to go among the Swedish

population and to work up private subscription, he chose Mr. Carl Carlson, and gave him both forms of blanks, with instructions.

"4. Mr. Carlson and Mr. Swanson are Swedes, and men of great influence among the population of that nationality. Mr. Swanson was quite well versed in the American ways of doing things; Mr. Carlson was not, neither can he read or write English well. So when Mr. Swanson gave to him these blanks he asked Swanson to explain them, and to tell him what he must do and what he could say to his people. Mr. Swanson did so, and among other things told him of the enterprise; that the two kinds of aid were to be raised; that the railroad was to be completed and operated on or before the 1st day of June. The language of the bond petition stated that the railroad was to be completed on or before the 1st day of June, and Swanson told Carlson that that was the condition of all the subscriptions and aid, and that the words 'before that date,' in this contract, referred to and meant the 1st of June.

"5. Swanson and Carlson both in good faith believed this; and when Carlson came to this defendant Grant to procure his subscription, he told Grant what Swanson had told him, showed him both kinds of blanks, and represented and stated the facts to be as above set forth, and that the railroad would be completed on or before the 1st of June, and that all aid was upon that condition; that Swanson was his authority, and had sent him out for the railroad company.

"6. Defendant Grant is a Swede also — cannot read or understand English thoroughly, and depended and relied upon and believed to be true all that Carlson said about the matter, and as to the meaning of the words 'before that date' in the contract. Grant was also a farmer, and had on hand at the time about five hundred bushels of wheat, which he desired to market at some time before the month of June, to wit, before the harvest would come on of the new crop, as he would not then have time to market it, and as he did not have bin-room enough for his old and new crops and must clear out his bins. He told Carlson of this. His then market and nearest railroad station was Salina, thirty odd miles distant. The railroad completed to Lindsborg, there would be only the distance of ten miles for him then to haul his wheat. He said to Carlson substantially, 'I do not care anything about this railroad for another year, as we will then

have one at McPherson nearer for me than this, but I would like to get rid of hauling wheat to Salina. It will cost me ten cents a bushel to have to market my wheat at Salina, and at Lindsborg only about three cents. I will make by it at least forty dollars; and if you say this railroad will be completed to Lindsborg before the 1st of June, so I can market my wheat there, and that this is the meaning of this contract, I will sign it and give you thirty dollars for the railroad.' Being again assured that such was the agreement, and that if the railroad was not so completed to Lindsborg before the 1st of June he need not and would not have to by its terms pay the contract at all, and believing this to be true and the meaning of the language of the contract, he executed and delivered it; and this was the only and sole consideration for the agreement, and without which the defendant would not have executed it.

"7. That said railroad was not completed to Lindsborg until the 3d day of July. The defendant had to and did haul his wheat to Salina for market, and therefore the consideration for the agreement has wholly failed, and for these reasons he has refused to pay the same.

"8. That said plaintiff was one of said board of directors of the railroad company, and the treasurer thereof, and to whom the said agreements for private aid or subscription were given by Swanson for the company. But it does not appear that Swanson told the plaintiff or the said board of directors of the statements that had been made as to the meaning of, or construction placed upon the words 'before that date,' or that either knew of the same. That the contract sued on was by the railroad company for a valuable consideration, duly assigned to this plaintiff, and he is the owner thereof.

"9. That the railroad company, at the time this contract sued on was given, intended to build a road to Lindsborg by the 1st of June, as now stated and represented, but failed to do so, and when its inability was apparent, it had the municipal aid voted over to it; and the blank forms for private aid or subscription were prepared with the 1st day of November inserted, instead of the 1st day of June, because of the fact that the farmers would probably be able to pay them, while they would not on the 1st of June, and with the '1st of June' inserted for payment, it would not be liable to get so much aid."

CONCLUSIONS OF LAW.

" 1. The consideration for the contract wholly failing, the defendant is not liable.

" 2. If Mr. Swanson and Carlson can be called the agents of the railroad company ( as I think they should be ) in making the representations and statements they did make to defendant, then of course it and its assignees are bound by them; but if held not the agents, but strangers, then the railroad company seeking to take the benefit of their acts must also take the burden of them. The words 'before that date' being construed by the party procuring the contract, the defendant under all the circumstances had the right to rely upon that construction then and can plead it now. That construction allowed, then under all the findings there is no liability by defendant.

" 3. If the case can and is to be determined on the question of negligence merely, ( thereby waiving any higher wrong,) then under the findings the railroad company or the parties procuring the contract is the negligent party, and the defendant is entitled to judgment."

*Wickham* excepted to the findings of fact and conclusions of law. The court rendered judgment in favor of the defendant *Grant* for all costs, to which judgment *Wickham* also excepted, and brings the case here.

*Waller & Earle,* for plaintiff in error.

*Simpson & Bowker,* for defendant in error.

.The opinion of the court was delivered by

HORTON, C. J.: This action was commenced in a justice's court and appealed to the district court, where the judgment complained of was rendered. The defendant below did not file any written answer or other pleading before the justice, and no demand therefor was made. Upon the appeal the case was tried on the original papers, and therefore the defendant was authorized to introduce on the trial any evidence to prove any defense which he had, and without filing an answer, he was authorized to set up any defense that he had to defeat a recovery upon the notes sued on. He therefore

had the right to show that the notes were obtained by fraud, and without consideration. It is established from the evidence and findings, that the defendant is a Swede who cannot read or understand English thoroughly, and relied upon and believed to be true all that was said to him by one Carl Carlson, in regard to the meaning of the words "before that date" contained in the notes signed by him, who was selected by John Swanson, a director of the Salina & Southwestern railroad company, to go among the Swedish people in Smoky Hill township, McPherson county, and work up private subscriptions for the company. Both Carlson and Swanson are also Swedes, and men of great influence among the population of the neighborhood where they reside. Carlson, who obtained the notes from the defendant, told him that the railroad was to be completed from the city of Salina to the town of Lindsborg on or before the first day of June, 1879; that that was the condition of all the subscriptions, and that the words "*before that date,*" contained in the notes, referred to and meant the 1st day of June, 1879. Carlson further said that if the railroad was not so completed to Lindsborg before the 1st day of June, 1879, that the defendant need not and would not have to pay the notes at all. The defendant, wishing to transport to the railroad several hundred bushels of wheat on hand at the time of these representations, and relying upon the representations as true, signed the notes in controversy. It also appears from the findings that Swanson and Carlson believed the representations, at the time they were made, to be true. Even if this be conceded, the contracts which the defendant was induced to enter into were fraudulent. Whoever positively and generally makes a false assertion, as an inducement for another to contract with him, and succeeds on that ground, is guilty of a fraud which vacates the contract. It must be as represented, or it is fraudulent. A man who does so, ought to suffer; he must answer for the truth. (*Snyder v. Findley,* Coxe, 78.) Even where the representations, however innocently made, are untrue in fact, the party who relies upon them ought not to be bound by a misrepresentation which

positively and directly deceives him; and where an expressed representation turns out to be untrue, it is immaterial whether the party making it knew it to be false, or not. If he did not know it to be true, (and he could not know it to be so if it were false,) he is as answerable as if he made it knowing it to be false. As the defendant by confiding in the false and erroneous representations of Carlson was induced to sign the notes, he ought in equity and good conscience not to pay them. (*Waters v. Mattingly*, 1 Bibb, 244; *East v. Matheny*, 1 A. K. Marsh. 192.) As the board of directors of the railroad company delivered to Swanson, a resident director at Lindsborg, the blank notes, and as he chose Carlson to take the notes and obtain subscriptions thereby, the company could not accept such notes and obtain the benefits therefrom, and at the same time disown or disregard the representations and means by which the signers were induced to execute them. The notes are non-negotiable, and the plaintiff cannot enforce their collection if they were void in the hands of the railroad company. It is immaterial, in our view, upon the findings of fact, whether Swanson had any authority to employ Carlson to take subscriptions and to direct him to make the representations so made, or not; and it is likewise immaterial whether he informed the railroad company of the representations made to secure and obtain the subscriptions. The company accepted the notes and must take them, as was well said by the court below, " with their burdens, as well as their benefits."

Our attention is called to *Cornell v. Railway Co.*, 25 Kas. 613, and it is urged that that case is decisive in favor of the plaintiff. All that was decided or intended to be decided in that case was, that parol testimony is inadmissible to contradict the terms of a written agreement, and that the testimony of a conversation between the parties at the time of the execution of a contract, varying, enlarging or changing its terms, is inadmissible. Here the testimony of the defendant was admitted, not to contradict the terms of the notes, but to show that he was imposed upon, and that a fraud in law was

practiced in obtaining his signature thereto. Fraud vitiates everything it touches, and a contract obtained thereby is not enforcible. Evidence is always admissible to show that contracts, and even final judgments of courts of record, have been fraudulently obtained; and where the evidence sustains it, courts have the power to grant relief in all cases.

The judgment of the court will be affirmed.

All the Justices concurring.