No. 21,847.

CHARLES M. BICE, *Appellant*, v. HENRY E. NELSON, *Appellee*.

SYLLABUS BY THE COURT.

1. PLEADINGS—*Sale—False Representations by Agent of Seller—Pleading —Agency*. In an action by the seller for the price of a chattel, an allegation of the answer that the sale was induced by false representations of the seller may be sustained by proof that the representations were made by an agent of the seller, without pleading the agency.

2. SAME—*Collusion Pleaded*. The allegations of the answer in such a case considered, and held sufficient to charge collusion of the seller with another in making the fraudulent sale.

3. SALE—*Collusion between Seller and Another*. Where a sale of a chattel is made for the mutual benefit of the seller and another, and the sale is procured by false representations of one of them, active coöperation of the other, by means of statements tending to induce the buyer to accept and rely on the representations, constitutes collusion.

4. SALE—*False Statements of Seller Actionable*. In this state, false statements of fact, made by a seller to induce a sale and relied on by the buyer, are actionable, without regard to whether or not the seller knew the statements to be false, or acted recklessly in making them, or intended to deceive.

5. TRIAL—*Evidence*. The evidence examined, and held to be sufficient to sustain the allegations of the answer.

6. SAME—*No Error in Record*. Various assignments of error considered, and held to be without substantial merit.

Appeal from Phillips district court; WILLIAM S. LANGMADE, judge. Opinion filed April 12, 1919. Affirmed.

*W. A. Barron*, of Phillipsburg, and *Webster Ballinger*, of Denver, Colo., for the appellant.

*W. N. Moore*, and *William Kingery*, both of Phillipsburg, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the payee of a promissory note to recover from the maker. The defense was that the note was procured by false representations. The defendant prevailed, and the plaintiff appeals.

The note was given for the price of an auto truck owned originally by John Klaes. The plaintiff owned real estate which he sold to Klaes. Klaes desired to give the truck in part payment, but the plaintiff would not accept it until Kleas found a purchaser for it. Klaes produced the defendant. Klaes gave a bill of sale of the truck to the plaintiff, which the plaintiff assigned to the defendant. The defendant secured his note by a mortgage on the truck. The truck was sold for a specific purpose. It was utterly worthless for that purpose, and the defendant returned it to the plaintiff.

The answer alleged that the plaintiff "warranted" the truck to be of the kind desired, and that the defendant purchased relying on "the representations and statements of the plaintiff." The answer further alleged that the plaintiff did then and there "warrant and guarantee" the truck to give satisfaction for the purpose for which the defendant was buying it, and the defendant executed his note and chattel mortgage solely upon the aforesaid "representations and statements" of the plaintiff, and in conjunction with the plaintiff, of Klaes. The fifth paragraph of the answer was as follows:

"Defendant further alleges that at the time the note and mortgage herein sued upon was executed and delivered as aforesaid, the defendant was very much in need of a mode of conveyance to haul coal 'from the mines of Marshall to the city of Boulder, Colorado,' as alleged in plaintiff's amended petition, which fact he made known to the plaintiff and one John Klaes, a person with whom the plaintiff claimed he was consummating a deal, whereby the plaintiff would become the owner of said auto truck as aforesaid, provided he, the defendant, would purchase the same; thereupon the representations and statements as hereinbefore alleged in paragraphs two, three and four were made to the defendant by the said John Klaes, the plaintiff being present and assenting thereto, both urging the defendant to buy this truck, and both claiming as aforesaid that said truck would do the work for which they knew the defendant was greatly in need of such a car or conveyance; the defendant, acting solely upon the above and foregoing representations of the plaintiff and the said John Klaes, made, executed and delivered said note and mortgage to the plaintiff, who now holds the same, without any other consideration."

It is quite clear that the allegations of warranty, guaranty, and representations all referred to the statements respecting the suitability of the truck for the defendant's use, made to induce the sale. The proof was that Klaes made the representations, and the plaintiff insisted he did not even indorse what Klaes said. The court instructed the jury that the plain-

Bice v. Nelson.

tiff would be bound by the representations of Klaes, if Klaes were his agent in selling or assisting to sell the truck. The instruction stated the law, and it was not necessary to allege the agency of Klaes in order to establish the charge that the plaintiff made the representations.

It is said there was no evidence on which to base the instruction. The agency of Klaes was sufficiently established by the plaintiff's own testimony. He testified that when Klaes made the proposition to trade for his real estate, he told Klaes he would make the deal if Klaes would get him a buyer for the truck. Klaes made his bill of sale to the plaintiff, and the defendant bought the truck of the plaintiff, as the result of Klaes' activity.

The court further instructed the jury that the plaintiff would be liable for the false representations if he and Klaes were acting in collusion. It is said that collusion was not pleaded. The paragraph of the answer quoted above sufficiently raised the issue of collusion. It was not necessary that the word collusion be employed, and it was not essential that there should be any agreement to combine efforts in order to constitute collusion. (*Balch v. Beach,* 119 Wis. 77, 92.) In the case cited, it was held that failure on the part of school-district officers to perform a known duty to make defense to an action against the district constituted guilty collusion, rendering the judgment pronounced in the action subject to attack in equity by taxpayers. Where a sale of a chattel is made for the mutual benefit of the seller and another, and the sale is procured by false representations of one of them, active coöperation of the other, by means of statements tending to induce the buyer to accept and rely on the representations, constitutes collusion.

It is said there was not sufficient evidence on which to base an instruction relating to collusion. The evidence already referred to disclosed the interests of the plaintiff and Klaes in disposing of the truck to the defendant. The plaintiff testified the defendant told him the defendant had contracts to haul coal, and wanted the truck for that purpose. There was evidence that the plaintiff was informed the defendant's time was limited, that he did not have time and did not have an expert to examine the truck, and that the plaintiff refused to permit the defendant to test the truck for five days in the work

which it was expected to do. Klaes had given profuse assurances that the truck was just what the defendant wanted. Such being the defendant's situation, the plaintiff actively aided the sale in the manner shown by the following testimony of the defendant:

"A. He [Bice] said to me, 'Mr. Klaes has guaranteed this truck; I think Mr. Klaes is all right.' That is the way he put it. He had previously said he knew nothing about the truck—never had seen it. He took Mr. Klaes' word for it, that it was in good condition and would do my work."

"Q. Did he guarantee it 'would do my work'? A. Yes, sir."

"Q. And he [Klaes] guaranteed it to be good . . . that is the reason you bought it? A. Yes, sir, Mr. Bice also said to me at the time he thought Klaes was a reliable fellow and whatever he said would go with him, as to the condition of the truck.

"Q. He [Bice] told you he was fully depending on his statement? A. Yes, sir, he believed Mr. Klaes was all right, he would guarantee the truck with Mr. Klaes."

In this state, false statements of fact, made by a seller to induce a sale and relied on by the buyer, are actionable, without regard to whether or not the seller knew the statements to be false, or acted recklessly in making them, or intended to deceive. (*Wickham v. Grant,* 28 Kan. 517; *Morrow v. Bonebrake,* 84 Kan. 724, 115 Pac. 585; *Westerman v. Corder,* 86 Kan. 239, 119 Pac. 868; *Maffet v. Schaar,* 89 Kan. 403, 131 Pac. 589; *Akins v. Holmes,* 89 Kan. 812, 820, 133 Pac. 849.)

The instruction given relating to examination of the truck by the defendant before purchasing stated the law and adequately covered the subject. The instructions pertaining to the same subject requested by the plaintiff, and an instruction regarding representation and warranty requested by the plaintiff, were unsound. (*Foote v. Wilson,* ante, p. 191; *Griesa v. Thomas,* 99 Kan. 335, syl. ¶ 4, 161 Pac. 670.)

The jury were fully and properly instructed concerning what the defendant was required to prove to establish his defense, and it was not error to refuse special instructions dealing with particular phases of the evidence. It was not error to refuse a new trial for the purpose of allowing the plaintiff to produce impeaching evidence claimed to have been newly discovered. There is nothing else of importance in the case.

The judgment of the district court is affirmed.

Bite v. Nelson.

## OPINION DENYING A REHEARING.

(Filed June 7, 1919.)

The plaintiff files a motion for a rehearing which accepts as correct the statement of the law of Kansas contained in the fourth paragraph of the syllabus of the former opinion. It is said, however, that the sale in controversy was made in Colorado, and that the law of the place where the sale was made governed. The plaintiff is an attorney, and signs the petition as his own counsel. If the law of Colorado clothed him with any special privileges and immunities in respect to false representations, he ought to have pleaded and proved it. Without such pleading and proof, the court was authorized to assume that the law of Colorado is the same as the law of Kansas.

The motion for a rehearing is devoted largely to disputing the court. The plaintiff admits he did not have the record before him when the motion was prepared, but that fact did not deter him from flatly contradicting the court's statements of the evidence. The defendant deemed it necessary to take advantage of rule 5 of this court and file a counter-abstract, which was properly certified as a true and correct counter-abstract of the record, and which opened with the following statement:

"The abstract of the appellant being inaccurate and incomplete, garbling of the records, the appellee submits the following parts of the record that this court may have an intelligent understanding of the facts that the jury based their verdict upon."

The counter-abstract was not challenged; consequently the court quoted from it and relied on it in making general statements concerning the nature of the evidence. The original transcript now lies before the court. With reference to the plaintiff's own testimony showing that Klaes was his agent to sell the truck, the transcript contains the following:

"When Klaes came to you and offered you that proposition to trade your house for this truck, you told him that if he would get you a buyer for the truck you would make the deal? A. Yes, but I wouldn't take the truck under any other circumstances. It was an elephant on my hands.

"Q. You told him that if he would get you a buyer for the truck you would make the deal? A. Yes, if he would give me an acceptable amount, yes, if he would get me a cash amount. I would take cash, of course, but he had to give me a satisfactory deal."

The fact that the plaintiff was seller is abundantly shown by other evidence.

With reference to some other material matters, the transcript shows the following:

"Q. When you next went to Mr. Bice's office, you went alone? A. Yes, sir.

"Q. And when you went alone what was the conversation? A. Mr. Bice told me he would take my personal note and my chattel mortgage on this truck.

"Q. How much did you offer to give Mr. Bice for the truck, as you claim? A. He wanted $1,400 for the truck. I had offered Mr. Klaes $1,300 for the truck, so Mr. Bice said he could n't sell the truck for $1,300, but would be willing to take my note at $1,400, and then we got to talking about hauling of coal. . . .

"Q. And you told him you would give him your note and mortgage on the truck for $1,400? A. Yes, sir.

"Q. For the truck? A. For the truck, yes, sir.

"Q. Did Mr. Bice in any way guarantee the kind of a truck that you were getting, Mr. Nelson? A. He said to me, 'Mr. Klaes has guaranteed this truck. I think Mr. Klaes is all right.' That is the way he put it.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Now state to the jury the conversation both times. A. The first time I met Mr. Bice with Mr. Klaes we talked about the truck, and Mr. Klaes said that the truck was in good running condition, that he would guarantee the truck. And as he told Mr. Bice that my time was limited with the coal mine lease, he said it was necessary for me to hurry and get the truck and go and haul coal at once, and they would then talk about consummating the deal, closing it.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. You was ready? What did they say? Tell the jury what they said. A. They said, 'Now the truck, Mr. Nelson wants this truck, and I have guaranteed the truck to him, he has n't got time to examine it, has n't got a man so as to give it a thorough examination to satisfy himself, but he is willing to take the truck on my say so.'

"Q. Kleas told Bice that? A. Yes, sir.

"Q. What did Bice say? A. Bice says, 'All right, I will take his note and the mortgage on the truck.'

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. What did you say to Bice before you signed the note and mortgage about allowing you a chance to use it? A. I asked Mr. Bice if I could have five days' time in which to try the truck. He said, 'No, we can't do that because it is out of our county. Out of my county, you get possession of it,' etc. I don't remember the exact words, but I do remember that part of it.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. You stated in your examination, Mr. Nelson, that you took Mr.

Nelson v. Bank.

Klaes' word for the condition of the truck and this land condition?  A.
I did, absolutely.

"Q. That you depended upon his statements?  A. Yes, sir.

"Q. And that he guaranteed it to be good, therefore you, that is the
reason you bought it?  A. Yes, sir, Mr. Bice also said to me at the time
he thought Klaes was a reliable fellow, and whatever he said would go
with him, as to the condition of the truck, therefore I relied on him.

"Q. He said that he was all right?  A. Yes. sir.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. When I asked you, did you not state that you were relying ex-
pressly upon the warranties and guarantees of Mr. Klaes?  A. Not
altogether, as I took Mr. Bice's representations to me that this man
Klaes was, he was fully depending upon Mr. Klaes' statement.  He says,
'I believe—'

"Q. He told you he was fully depending on his statement?  A. Yes,
sir.  He believed Mr. Klaes was all right.  He would guarantee the
truck with Mr. Klaes."

In all other respects the transcript fully sustains the ver-
dict and judgment of the district court and the opinion of this
court.

A fundamental fallacy of the motion for a rehearing con-
sists in this: The plaintiff relies on the evidence favorable to
himself, while the jury accepted and relied on the evidence
favorable to the defendant. The law of the case was sufficiently
discussed in the former opinion.

The motion for a rehearing is denied.