No. 34,646

Anna Nelson, *Appellee*, v. Burke Healey, doing business as Healey Motors, *Appellant*.

(99 P. 2d 795)

Opinion filed March 9, 1940.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton* and *R. E. Haggart*, all of Salina, for the appellant.

*William S. Norris, Wint Smith, Homer B. Jenkins* and *Frank C. Norton*, all of Salina, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action for damages for personal injuries sustained in an automobile casualty alleged to have resulted from the negligence of defendant. The jury answered special questions, and returned a general verdict for plaintiff for $5,922.35, on which judgment was rendered. Defendant has appealed.

The pertinent facts disclosed by the evidence, which tend to support the findings and judgment of the jury and trial court—although some of them were sharply contested—may be summarized briefly as follows: Plaintiff is the wife of Dwight Nelson, who operates a transfer and storage business, having a designated place of business in Salina. For four years prior to June, 1937, he owned a 1930 Chevrolet automobile, which was used by him and his wife for pleasure driving. His wife did more of the driving than he did

and she was a good, experienced driver. The defendant, Burke Healey, was engaged in the automobile business in Salina. He was the dealer for the Ford, Zephyr and Lincoln automobiles. He also sold used cars which he acquired in the course of his business. He maintained two separate places of business in Salina, at one of which he handled new cars and at the other he handled used cars. He also had a place of business at Lindsborg. To further the success of his business, and particularly the sale of used cars, he adopted the slogan that the cars were "Healeyized," and represented that they had been "reconditioned and guaranteed," and he used a circular design with the large letters "R. & G," meaning reconditioned and guaranteed, and sometimes in connection with such phrases as "Best in the World," "Bargain R & G Cars." Large signs or placards carrying these representations, or some portion or combination of them, were put up in front of each of his places of business in Salina. Smaller road signs were put up along the main highways. Advertisements were run in the daily papers which stressed the representation that the "Healeyized," "Best in the World," "Reconditioned and Guaranteed Bargin Cars," were safe and dependable. Plaintiff and her husband had read many of these signs and advertisements, were familiar with defendant's representations with respect to the superiority and dependability of used cars sold by him, and came to rely upon them and to believe that if they bought a used car from defendant it would be one that had been reconditioned and made safe and dependable. John Vlader, an employee of defendant as a salesman of both new and used automobiles for more than a year prior to June, 1937, and who was familiar with the signs, placards and advertisements and representations made by defendant respecting used cars which he sold, or offered for sale, on a number of occasions talked with Dwight Nelson in an effort to sell him a better used automobile, taking his old Chevrolet as part payment. He had contacted Mr. Nelson as many as eight times. Mr. Nelson told Vlader that his wife did most of the driving; that he wanted an automobile that was in good condition and safe for her to drive. On Saturday afternoon, June 19, 1937, Vlader went to Nelson's place of business with a 1933 Pontiac automobile, which he told Nelson he was sure would meet his requirements, and offered to sell it to him for $280 and take his older Chevrolet at $100. He represented to Nelson that the car had been reconditioned, that it was in good condition, and particularly talked about the

tires, and represented that they were good and safe. He proposed that Nelson take it and try it over the week end and let his wife drive it and see how she liked it. Nelson consented to do this. He drove the car from his place of business out to his residence; his wife drove it, taking him back to his place of business. That evening they drove about the city on the pavements a total distance of perhaps six miles. On Sunday afternoon, about five o'clock, the plaintiff, with her father and mother and her three children, the oldest eight years of age, one about two, and the other a babe, started to take a ride about town, the plaintiff driving. They took a drive out near the edge of the city and were returning at a speed of 30 to 35 miles per hour on a level stretch of highway which had been newly sanded and graded, leaving a light layer of sand on the surface, when the left front tire blew out. The blow-out was on the tread of the tire. The opening made by it was about two inches in diameter. The car swerved and went into a ditch and turned over. Plaintiff was severely injured. We pass the evidence pertaining to the extent of her injuries, for it is not seriously contended that the verdict is excessive if plaintiff is entitled to recover.

Defendant had acquired this Pontiac automobile from Arvid Youngquist of Lindsborg on May 10, 1937, as part payment on another automobile. Youngquist had owned the car six or seven months and in that time had driven it between four and five thousand miles. The tires which were on the car when he got it were the same ones on it when defendant acquired it. Within a day or two after he received the car defendant had one of his employees clean the car up and paint the sidewalls of the tires with a dressing similar to that used in dressing the tops of cars. This was done to improve the appearance of the tires. In thus painting the tires the workman would notice whether there were any serious cuts or bruises on the tires, and if so would report that to the foreman. No such report was made with respect to the tires on this car. The tires were not taken off the wheels and examined on the inside for breaks, cuts, or defects in the casings or tubes. Defendant made no inquiry as to how old the tires were, or how much they had been used. There is no evidence the car had been reconditioned in any way, other than to clean it up and to paint the sidewalls of the tires, to improve its appearance.

The jury was asked and answered special questions as follows:

"1. What caused the left front tire of the automobile driven by plaintiff to blow out? A. Negligence of defendant.

"2. Was the left front tire on the automobile in a dangerous condition at the time the automobile was delivered by the defendant's agent to the plaintiff's husband? A. Yes.

"3. If you answer the foregoing question 'yes,' then state whether or not defendant or his agent knew said tire was in a dangerous condition at the time such delivery was made. A. Did not know, account of improper inspection. Tires should have been inspected inside as well as outside.

"4. If you answer question No. 3 'No,' then state whether, under the circumstances in evidence in this case, the defendant or his agents and employees in the exercise of ordinary care should have known that the left front tire of the automobile was in a dangerous condition when it was delivered to the plaintiff's husband? A. Yes; should have known by proper inspection, which should include inspecting all the tires both inside and outside.

"5. Did the defendant make the same inspection of the tires that is customary and ordinarily made by dealers in secondhand automobiles before the automobile was delivered to plaintiff's husband? A. Yes.

"7. If you answer question No. 5 'yes,' then state whether or not the defendant discovered any facts from which he should have known that the tire on the automobile was dangerous. A. Did not make proper inspection according to their advertising. Tires should have been thoroughly inspected both inside and outside.

"8. If you answer the foregoing question 'yes,' then state in detail what the facts were which he discovered. A. Did not discover anything because proper inspection was not made, according to defendant's advertising. If tires had been inspected, both inside and outside, proper inspection would have resulted.

"9. If your answer to question No. 5 is 'yes,' then state:

"(a) When was such inspection made? A. A short time after used car was delivered to them for resale.

"(b) Did the defendant or any employee or agent of the defendant make any examination of the inside of the tire. A. No.

"(c) At the time the automobile was delivered to the plaintiff's husband, did the defendant's agent and employee, John Vladar, state to the plaintiff's husband, in substance, that the tires on the automobile were in good condition? A. Yes.

"10. At the time the automobile was delivered by the defendant or his agents to the plaintiff's husband, did the defendant or his agent know that the automobile was to be tried out and used by the plaintiff? A. Yes.

"11. If you answer the preceding question 'yes,' then state:

"(a) Did the plaintiff at that time have knowledge that the defendant advertised to the public by means of signs on his places of business, newspaper advertising, and signs on highways, that the used cars offered for sale by defendant were renewed and guaranteed cars? A. Yes.

"(b) Did plaintiff at that time have knowledge that the defendant advertised to the public that the used cars offered for sale by him were safe and dependable? A. Yes.

"(c) If your answer to the preceding questions (a) and (b), or either of them is 'yes,' then did the plaintiff believe when she tried out and used the

automobile that it was an automobile which the defendant had advertised as being renewed and guaranteed and that it was safe and dependable? A. Yes.

"(d) If your answers to the preceding questions (a), (b), and (c) are 'yes,' did the plaintiff rely upon such advertisements and statements? A. Yes.

"12. Was the upset of the automobile an accident as defined by the court's instructions? A. No. (Negligence of defendant, caused by lack of inspection according to their advertising.)

"13. Was the defendant guilty of any negligence which was the proximate cause of the upset of the automobile and the injuries received by the plaintiff? A. Yes.

"14. If you answer the question No. 13, 'yes,' state fully all of such acts of negligence. A. Tires were not inspected properly. Tires were not inspected on the inside, according to the evidence submitted.

"15. Was the plaintiff guilty of any negligence which caused or contributed to her injuries? A. No.

"16. At any time when the automobile was in the possession of the plaintiff or her husband, did the left front tire strike any obstruction of any kind which weakened it or caused it to blow out? A. No."

Defendant's motion to set aside the answers to special questions No. 1, that part of No. 3 after the words "Did not know," Nos. 4, 5, 8, 11, 12, 13, 14, 15 and 16, and the general verdict, and to grant a new trial, was overruled.

Appellant complains of the rulings of the trial court in overruling his demurrer to plaintiff's evidence, his motion for judgment at the close of all the evidence, and his motion for a new trial, and the ruling of the court excluding evidence offered, and in giving improper instructions. While argued here under the different headings, these points all bear upon appellant's contention that the evidence was insufficient to sustain the findings, verdict and judgment, and this depends primarily upon the controlling rule of law applicable under the facts shown. Appellant properly argues that this is a tort action and that the burden of proof was upon plaintiff to prove negligence of defendant, which was the proximate cause of her injuries. Appellant also correctly argues he is not an insurer of the safety of the purchasers of used cars which he sells, and that the sale may be made under such circumstances that the rule of *caveat emptor* applies to the purchaser. However, such a dealer may sell a used car upon such representations as to its condition as to make him liable if he deliberately or negligently represents an automobile to be in good condition, safe and dependable to be used, and one who purchases the car, relying on such representations, and without fault on his part, sustains injuries by the use of the automobile.

The late case of *Curby v. Mastenbrook*, 288 Mich. 676, 286 N. W. 123 (1939), states and distinguishes the legal questions applicable here so fully that we feel justified in quoting from it at length. There Mr. Curby and his wife owned an old Ford automobile and trailer, which they took to a used-car dealer to trade in on a better used car. The dealer showed them a number of used cars and stated "they were all in good condition," and the dealer stated that his cars were "fully guaranteed for thirty days, and they would not let them out unless they were in perfect condition." Relying on these representations the Curbys exchanged their car and trailer for a newer Terraplane automobile and paid, or arranged to pay, the difference. While driving this car the next day the left front wheel came off, the driver lost control, causing it to collide with an oncoming automobile. The Terraplane was upset and Mrs. Curby was injured. She sued the used-car dealer and recovered a verdict, which the trial court set aside. This ruling was reversed by the supreme court, with directions to reinstate the verdict. In the opinion the court said:

"It is only necessary to discuss a few of the questions raised on appeal, construing the evidence in plaintiff's favor as on directed verdict. (*Yacobian v. Vartanian,* 221 Mich. 25, 190 N. W. 641.) Our attention is called to *Bayer v. Winton Motor Car Co.,* 194 Mich. 222, 160 N. W. 642, in which we stated that the rule of implied warranty, which may be regarded as an exception to the general doctrine of *caveat emptor,* does not apply to the purchase and sale of secondhand machinery such as used cars. However, in the instant case there is considerable evidence that defendants expressly represented that the car was free from defects and would not be sold if any defects existed. An additional guarantee of thirty days was made. When such statements are deliberately calculated to induce confidence in the buyer and promote the sale, they cannot be considered merely 'puffing' of goods to promote sales. Where sellers are describing the condition of chattels so likely, if defective, to occasion injury to life and limb, they should anticipate close scrutiny of their language by the courts. What might be considered mere 'puffing' of a perfectly harmless product, must be held a distinct representation in the case of an automobile. The condition of the Terraplane was the most material consideration in the entire transaction between the parties, and the words employed by defendants to describe it are clearly within the rule of *Worden v. Peck,* 245 Mich. 237, 222 N. W. 101. See, also, *Murphy v. McGraw,* 74 Mich. 318, 41 N. W. 917. . . .

"Appellees admitted that only a few days before the sale, the wheels of the car had been removed for painting, apparently by an independent contractor, who did such work for defendants. Nevertheless, without making any inspection of the wheels thereafter, defendants represented that the car was in 'perfect condition.' Obviously, defendants did not know whether or not the car was in 'perfect condition.' It has long been established that a party who mis-

represents a fact is subject to liability for bodily harm resulting from an act done by another in reliance on the truth of the statement, if the speaker intends his statement to induce the action, or should reasonably recognize that it is likely to so induce it, and if he knows that it is false or that he has not the knowledge which he professes to have. (See Restatement of Torts, § 310; *Washington & Berkeley Bridge Co. v. Pennsylvania Steel Co.,* 4 Cir., 226 F. 169; *Valz v. Goodykoontz,* 112 Va. 853, 72 S. E. 730. Cf. *Grinnell v. Chemicals Corp.,* 282 Mich. 509, 276 N. W. 535; *Baxter. v. Ford Motor Co.,* 168 Wash. 456, 12 P. 2d 409, 15 P. 2d 1118, 88 A. L. R. 521; and see Harper, Law of Tort, § 76.) While buyers of used cars would ordinarily be required to inspect them for defects, under the rule of *caveat emptor,* there was evidence here sufficient from which a jury could find that the buyers relied on the defendants' statements. These statements, whether careless or deliberate, induced the buyers to drive the car while in imperfect condition. . . .

"In so deciding, we by no means hold that a used-car dealer is an insurer of the cars he sells. We do not hold that he is required to inspect them for latent defects. . . . We hold only that a dealer cannot represent a car to be in 'perfect condition' where he does not have the knowledge of the condition which he professes, without assuming the risk of injuries proximately caused by such misrepresentation. Such decision requires only that if a dealer sells used cars 'as is,' he should not tell his customers that they are without defects. (See *Supera v. Moreland Sales Corp.,* 13 Cal. App. 2d 186, 56 P. 2d 595; *Jones v. Raney Chevrolet Co.,* 213 N. C. 775, 197 S. E. 757, and Cf. *Baxter v. Ford Motor Co.,* 168 Wash. 456, 12 P. 2d 409, 15 P. 2d 1118, 88 A. L. R. 521; *Flies v. Fox Bros. Buick Co.,* 196 Wis. 196, 218 N. W. 855, 60 A. L. R. 357.)" (pp. 124-126.)

In addition to the authorities cited in the decision just quoted, the following are to the same effect: *Dostie v. Lewiston Crushed Stone Co.,* (Maine) 8 Atl. 2d 393; *DeLair v. McAdoo, Appellant,* 324 Pa. 392, 188 Atl. 181; *Miles v. Chrysler Corporation,* (Ala.) 191 So. 245; *Egan Chevrolet Co. v. Bruner,* 102 F. 2d 373; *Pellette v. Mann,* 116 Kan. 16 (syl. ¶ 4), 225 Pac. 1067; *Bergstresser v. Van Hoy,* 142 Kan. 88, 92, 45 P. 2d 855.

In this case plaintiff did not have the burden of showing defendant actually knew the tire was defective when he represented the tires were good. It was defendant's duty to know the tires were good when he represented them to be so. If he made such representation without having made sufficient inspection of the tires to know whether his statement was correct he is subject to the same liability as though he had made a thorough inspection of the tire, knew it was defective, and had stated it was good. In either event the statement would be inaccurate and the rule of liability the same.

Appellant argues it was not clearly shown the tire which blew out Sunday afternoon was defective Saturday afternoon when the tires

were represented to be in good condition. A witness for defendant testified to having examined the tire soon after the accident and having found that there was a fresh mark on the tire and the rim such as would be made by the tire having been driven against a sharp stone. A witness for plaintiff testified that he had examined the tire the next day after the accident and that no such mark was on the tire or rim. Neither the tire nor the rim was brought into court, although they were in the possession of defendant all the time since the day following the accident. From this fact the jury would have been justified in concluding that the production of the tire at the trial would not have been helpful to defendant on the controverted testimony just stated. (See *Fowler v. Enzenperger*, 77 Kan. 406, 94 Pac. 995.) Furthermore, plaintiff's testimony was to the effect that the automobile had been driven only a few miles and on the pavement about town, and that the tire had not been driven against any object that would in any way injure or damage it. In this state of the record we think the jury was justified in finding that the tire had received no injury after it was delivered by defendant's representative Saturday afternoon.

The court's instructions were in harmony with the rule of law which we hold applicable to the facts shown by the record and found by the jury.

Appellant complains that certain evidence offered by him was excluded by the trial court. This evidence pertained to the general rule of defendant respecting guaranteeing used cars, and particularly the tires on used cars. What the general rule of defendant was in that respect, and insofar as it differed from his signs, placards and advertisements, was not material, since neither plaintiff nor her husband had been informed with respect thereto; hence the ruling of the court was correct.

We have examined all of the authorities cited by appellant, including *Bogart v. Cohen-Anderson Motor Co.*, (Ore.) 98 P. 2d 720 (1940), and find nothing in them which would require or justify a conclusion different from the one we have reached.

We find no error in the record. The judgment of the court below is affirmed.