No. 40,485

KENNETH WARE and MARVELLE WARE, *Appellants*, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, *Appellee.*

(311 P. 2d 316)

Opinion filed May 11, 1957.

*Aubrey Neale,* of Coffeyville, argued the cause, and *Raymond Belt,* of Coffeyville, was with him on the briefs for the appellants.

*Herman W. Smith, Jr.,* of Parsons, argued the cause, and *Elmer W. Columbia* and *John B. Markham,* of Parsons, and *Kirke C. Veeder,* of Independence, were with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by Kenneth and Marvelle Ware, appellants, against State Farm Mutual Automobile Insurance Company, appellee, to recover damages, actual and punitive, alleged to have been sustained by them as a result of fraudulent conduct resorted to by appellee's insurance adjuster in obtaining a release from appellants of a cause of action for damages for the wrongful death of their eight and one-half year old child as a result of the negligent operation of an automobile driven by the twelve-year old son of the appellee's assured. Appellants will hereinafter be referred to as plaintiffs and appellee as defendant or insurance company. Defendant demurred to plaintiffs' amended petition on the ground that it did not state a cause of action in favor of plaintiffs and against defendant. From an order of the trial court sustaining the demurrer, plaintiffs appeal.

For purposes of this appeal it is sufficient to note the petition alleged that plaintiffs were the parents of Duane Ware, eight and one-half years of age, who died as a result of injuries received while riding in an automobile owned by Clarence W. Smith, defendant's assured, and driven by his son, Wesley Eugene Smith, twelve years of age, under his instructions; that during the ride the car was driven in such a negligent manner that it skidded across the road and into a concrete bridge, turning over and killing plaintiffs' son; that the owner of the vehicle was negligent in permitting his son, then twelve years of age, to drive his automobile when he knew his son was neither authorized nor licensed to so do under the laws of Kansas and was not competent to drive.

It was further alleged that defendant had insured the automobile owned by Clarence W. Smith, indemnifying him against liability in the amount of $10,000.00 and providing for the payment of medical or funeral expenses to occupants not exceeding $500.00, which policy was in full force at all times; that three days after the death

of plaintiffs' son, on the day following the funeral, one Joe D. Allen, adjuster, agent and employee of the defendant, came to plaintiffs' home and informed them he represented the insurance company that had written the liability insurance on the automobile in which plaintiffs' son had been killed; that at this time plaintiffs were distressed, unnerved, and physically and mentally unable to transact business, and their condition was well known to defendant's agent. Plaintiffs further alleged that at the time defendant's agent wrongfully and fraudulently informed them they had no claim whatsoever against Clarence W. Smith, defendant's assured, but because of a policy change since June 1, 1955, he could pay them $500.00—the medical coverage under the policy—and this was all he could pay as there was no liability; that he further represented he was familiar with the new policy and if plaintiffs would furnish the funeral bill he would pay them $500.00; that because of their distressed mental state they relied upon such representations and accepted a $500.00 draft drawn on defendant by its agent; that the agent asked plaintiffs to sign a release, telling them it was a release for the $500.00 payment; that plaintiffs thereupon signed the release, which they did not read, relying upon the agent's representation that it was for the payment of funeral expenses under the policy, but, subsequently, learned it was a complete release of their claims against defendant's assured, Clarence W. Smith, and Wesley Eugene Smith, his son.

It was further alleged that the representations of defendant's agent in procuring the release were false and fraudulent, as plaintiffs actually had a valid claim against defendant's assured for $15,000.00 for the wrongful death of their son; that the change in defendant's policy was not only for medical payment of $500.00 but was also for $10,000.00 liability insurance for wrongful death; that the release should have been for the medical payment only and not for the release of plaintiffs' claim for the wrongful death of their son; that the fraudulent procuring of the release was for the purpose of preventing plaintiffs from prosecuting a claim against defendant's assured; and that because of the release so procured defendant refused to pay plaintiffs' claim on the ground that they had released its assured from further liability.

Plaintiffs asked for actual and punitive damages against the insurance company.

At the outset, it may be stated that this is not an action to recover damages for the wrongful death of plaintiffs' son. It is an independent suit for damages sustained, based upon alleged fraud and

deceit claimed to have been practiced upon plaintiffs by defendant's agent and adjuster, resulting in plaintiffs signing a release of their cause of action against defendant's assured, and, therefore, depriving them, through fraud and deceit, of their valuable right to be compensated for damages sustained. Although the validity of plaintiffs' original claim against Clarence W. Smith, defendant's assured, has to be established to determimne plaintiffs' damages, it does not follow that it must be litigated in advance or that it cannot be litigated in this action.

The issues raised are whether plaintiffs had a valid claim against defendant's assured, whether defendant by false and fraudulent representations deprived them of that claim, and whether as a result of the fraud they have been damaged.

First, did plaintiffs have a cause of action against defendant's assured, Clarence W. Smith, and his son, Wesley? G. S. 1949, 8-222, provides:

"Every owner of a motor vehicle causing or knowingly permitting a minor under the age of sixteen years to drive such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by the negligence of such minor in driving such vehicle."

We had occasion to construe the above statute in the case of *In re Estate of Bisoni,* 171 Kan. 631, 237 P. 2d 404, wherein we stated that the owner of a motor vehicle who permits his minor son under the age of sixteen years to drive a vehicle upon a highway is liable for any damages caused by the negligence of such minor in driving the vehicle, irrespective of whether the son is liable under our guest statute G. S. 1949, 8-122b.

In view of the mentioned statute and decision, it is clear that the plaintiffs' petition alleged sufficient facts to create a liability against defendant's assured.

Second, did defendant through its adjuster by false and fraudulent representations deprive plaintiffs of the right of action against defendant's assured? Plaintiffs' petition charged defendant with all the essential elements of actionable fraud. They have alleged the making, falsity and materiality of the representations of defendant's adjuster, his knowledge of their falsity, his intent that they should be acted upon by plaintiffs in the manner contemplated by him, plaintiffs' ignorance of their falsity, plaintiffs' rightful reliance on their truth, and the resulting damage. These allegations form a sufficient basis for the maintenance of this action.

Defendant contends that the adjuster's representations were mere matters of opinion and not of fact and, therefore, not actionable. We think not. Whether made in good faith or with fraudulent intent or merely through anxiety to make a good settlement for his insurance company, the fact remains that the adjuster did make the representations with the intention and for the purpose of inducing plaintiffs to make a settlement favorable to the insurance company and to part with all right to recovery against its assured.

In *Topinka v. American Eagle Fire Ins. Co.*, 167 Kan. 181, 185, 205 P. 2d 991, we stated:

"Where the insurance adjuster's false representations resulted in damage to the assured, the latter's pain of loss is not eased by the appellant's averments that the adjuster believed his statements to assured were true at the time they were made. False statements and misrepresentations of fact made by the insurance adjuster to the plaintiff for the purpose of inducing plaintiff to part with his property or property right, when relied upon by plaintiff, are actionable regardless of whether the adjuster knew his statements to be false or regardless of whether he made them in reckless disregard of their truth. (*Wickham v. Grant*, 28 Kan. 517; *Dodd v. Boles*, 137 Kan. 600, 21 P. 2d 364; *Westerman v. Corder*, 86 Kan. 239, 119 Pac. 868; *Bice v. Nelson*, 105 Kan. 23, 180 Pac. 206, 181 Pac. 558; *Becker v. McKinnie*, 106 Kan. 426, 186 Pac. 496; *Pellette v. Mann*, 116 Kan. 16, 225 Pac. 1067; *Bank v. Hart*, 82 Kan. 398, 108 Pac. 818; *Nelson v. Healey*, 151 Kan. 512, 99 P. 2d 795; *Kurt v. Cox*, 101 Kan. 54, 57, 165 Pac. 827.)"

See Black on Rescission and Cancellation (2d ed.), sec. 102, pp. 300-303.

In *Becker v. McKinnie*, 106 Kan. 426, 427, 186 Pac. 496, we stated:

"The defendant cannot escape liability for such false representations, even if he did not know them to be untrue. He had the means of knowledge, and it was his duty to know the truth before making the representations that were made. Having made them as facts and thereby induced the plaintiff to rely on the statements to his prejudice, he is bound although he may not have known that they were untrue, and may have had no purpose to defraud the plaintiff. Under the circumstances, knowledge of the untruth is imputed to him, and in contemplation of law he knew his statements were false."

An insurance adjuster, to properly perform his duties, should know the coverage of the policy under which he attempts to settle claims. He is clothed by his company with authority and is presumed to be familiar not only with the terms of the policy but also with the laws of the state. If he lacks such information, he has the means of obtaining it and, therefore, should be held accountable for any representations made concerning the policy's coverage at any particular time. Since he has such knowledge or the means of obtaining such knowledge, it is his duty to know the truth before

he speaks. Actual knowledge or intent under these circumstances is immaterial. It is therefore apparent that defendant's adjuster knew or should have known that plaintiffs had a just cause of action against the assured for the wrongful death of their son. The plaintiffs had a right to rely upon the adjuster's statements as those of a person speaking with complete factual knowledge.

Third, defendant contends that even though the release was fraudulently obtained it is not binding and plaintiffs may still maintain an action for damages against defendant's assured and, therefore, plaintiffs have suffered no damage. There is no merit to this contention. When plaintiffs signed the release of their cause of action against the assured, Clarence W. Smith, and his son, they gave up a valuable right—a right to sue the tort feasors for the wrongful death of their son.

An action could not now be maintained against the assured except on the theory of rescission. It is a well-established rule that where a release of a cause of action is procured by fraud the defrauded party may choose any one of three remedies: (1) he may return the consideration paid for the release, thereby rescinding the transaction; (2) he may sue for a rescission and offer to return the consideration; or (3) he may waive his right to rescind and sue to recover any damages suffered by reason of the fraud perpetrated upon him. See *Kordis v. Auto Owners Ins. Co.*, 311 Mich. 247, 18 N. W. 2d 811; *Inman v. Merchants Mut. Casualty Co.*, 74 N. Y. S. 2d 87, *affirmed* in 274 App. Div. 320, 83 N.Y. S. 2d 801; *Automobile Underwriters, Inc. v. Rich*, 222 Ind. 384, 53 N. E. 2d 775; *Bailey v. London Guarantee, etc.*, 72 Ind. App. 84, 121 N. E. 128; *Brown v. Ocean Accident & Guarantee Corp.*, 153 Wis. 196, 140 N. W. 1112; *Pattison v. Highway Insurance Underwriters* (Tex. Civ. App.), 278 S. W. 2d 207.

The defendant by accepting the fruits of the alleged fraud of its adjuster rendered itself liable for the fraud. Plaintiffs were not required to sue defendant's assured as the primary tort feasor nor is the assured a necessary party to this action. They had the right to select their own remedy to recover damages by reason of the fraud perpetrated upon them by the defendant.

It follows that the order of the trial court sustaining defendant's demurrer to plaintiffs' petition is reversed and the cause is remanded with directions to reinstate plaintiffs' petition and fix the time for defendant to answer.

It is so ordered.